YELVINGTON v. ALSTON, TRUSTEE.

4-7334                                                      180 S. W. 2d 120

Opinion delivered May 15, 1944.

*Henry Stevens,* for appellant.

*Chas. C. Wine,* for appellee.

SMITH, J. C. C. Smart owned the N½, NE¼, NE¼, of section 14, T. 15 S., range 20 W., a 20-acre tract of land, except 7 acres on the west side of this tract, but he and one Corbin Yelvington owned, each, an undivided one-half interest in the minerals in this 7-acre tract, which is described as follows: "Beginning at the NW corner of said NE¼ of the NE¼ and running thence east 25½ rods; thence in a southeasterly direction approximately 20 rods to the center of the N½ of the NE¼ of the NE¼ of 14-15-20; thence west 40 rods to the west line of said forty; thence 40 rods to the point of beginning."

On February 3, 1941, Smart executed an oil and gas lease to W. C. O'Ferrall for the development of oil and gas in, on and under this 20-acre tract. This lease contained no reference to Yelvington's interest and did not except it, but Smart was the owner of the remainder.

O'Ferrall was advised of the interest of Yelvington, and on April 2, 1941, he and one Turner, who was interested with O'Ferrall in the lease, executed an assignment of the Smart lease to Fitzwater and McClerkin, which described the land covered by the assignment of the lease as follows: "The N½ of the NE¼ of the NE¼ of section 14, T. 15 S., R. 20 W., Columbia county, Arkansas, containing twenty (20) acres of land, more or less, but this does not include a small tract of land three and one-half (3½) acres in extent, located in the northwest (NW) corner of said tract, which is not covered by the lease now owned by Parties of the First Part."

This tract referred to as being 3½ acres in extent, should properly have been described as an undivided one-half interest in 7 acres, but we think it clear that O'Ferrall and Turner were assigning their entire interest in this 20-acre tract, but were not assigning the interest which they did not own which was Yelvington's undivided one-half interest in the 7 acres on the west side of the 20-acre tract, which was referred to in this assignment as 3½ acres.

O'Ferrall, acting for Fitzwater and McClerkin, his assignees, applied to and obtained from the State Oil and Gas Commission, on April 3, 1941, a permit to drill on land described as follows: "Number of Acres 20 Location 330' out of NE corner Sec. 14, Twp. 15 Range 20, ............................ County, Stephens Field 4 Miles ............................ direction from Stephens, nearest post office or town."

The well was completed April 19, 1941. Thereafter on July 23, 1941, application was made to the State Oil and Gas Commission for a corrected permit which was designated as "Amendment of and substitution for application No. 7678," which being the number of the application dated April 3, 1941, and the July application bore the same number and was granted as a corrected permit.

The secretary of the Oil and Gas Commission testified that both permits were issued on a 10-acre spacing, it being assumed that the location described as 330 feet out of the northeast corner of the section would place the well in the center of the NE¼, NE¼, NE¼. It will be observed that a well could not be drilled on land here involved within 330 feet of the northeast corner of the section, without being located in the NE¼, NE¼, NE¼.

The well was completed April 19, 1941, which was before the issuance of the first permit, but after the issuance of the second, and it proved to be a producer. The cost of drilling was $15,231.23 and the operating and maintenance cost was $4,929.26. These figures are not questioned, and Yelvington paid not a cent thereof, and was not asked to do so. The oil from the well was sold to the Stephens Refining Company.

After production began, Yelvington asserted an interest in the proceeds of the sale of the oil, and the Stephens Refining Company reserved payments equalling the percentage claimed by Yelvington, whereupon Fitzwater and McClerkin brought this suit to have the rights and interests of the parties adjudged.

The answer filed by Yelvington alleged that the permit to drill covered the N½, NE¼, NE¼, and that the well was drilled on that land, in which he owned an undivided one-half mineral interest in 7 acres thereof, his land lying and being in the NW¼, NE¼, NE¼, which is a part of the N½, NE¼, NE¼.

The court found the fact to be that Yelvington had no interest in the oil, and dismissed his answer as being without equity, and from that decree is this appeal.

Yelvington sought to recover upon the theory that he was a tenant in common with Smart and as such owned an interest in the land on which the well had been drilled, but the court found, and we think correctly so, against that contention.

McClerkin and Fitzwater are producing oil, under and subject to the provisions of the original Smart lease, and the assignment thereof made to them by O'Ferrall and Turner. Yelvington owns no interest either as a tenant in common, or otherwise, in and to the NE¼, NE¼, NE¼, or the oil and gas and minerals thereunder. Whatever interest he owns is confined to the 7 acres above described, located in the NW¼, NE¼, NE¼.

In the opinion delivered by the chancellor, it was stated that the case presented no question of drainage from the land Yelvington owns an interest in, and that a recovery was not sought upon that ground. O'Ferrall, who has an overriding interest in all the N½, NE¼, NE¼, except the 3½ acres owned by Yelvington in the NW¼, NE¼, NE¼, testified that it was his intention to have a well drilled on the NW¼, NE¼, NE¼, which is the 10-acre tract in which is Yelvington's interest, but that this could not be done until after the war on account of the government's restrictions on the use of essential

steel and piping. This drilling on the NW¼, NE¼, NE¼ may require an integration order under § 15 of Act 105 of the Acts of 1939, on account of Yelvington's interest in that land, but this is a question not here involved. Suffice it to say, that, as found by the court below, Yelvington has no interest in the 10-acre tract described as the NE¼, NE¼, NE¼, and the decree dismissing his answer as being without equity must be affirmed, and no other party has appealed.

Knox, J., disqualified and not participating.